IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　) CR 06-382
　　　　　　　　　　　　　　　　) See Civil Action No. 14-797
　　　　　　　　　　　　　　　　)
JAMES DARNELL WILSON,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendant/Petitioner. )


MEMORANDUM OPINION


Petitioner James Darnell Wilson, on June 19, 2014,
filed a "Motion to Correct Sentence under 28 U.S.C. § 2255"
(Doc. No. 63). After the case was stayed for a time, Petitioner
then filed, on September 9, 2014, a supplemental brief in
support of his motion (Doc. No. 70). Upon consideration of this
motion and brief, and upon further consideration of the
Government's responses thereto (Doc. Nos. 76 and 79), filed on
October 20, 2014, and Petitioner's reply (Doc. No. 82), filed on
November 4, 2014, the Court dismisses Petitioner's motion for
the reasons set forth herein.

I.　　　　**Background**

On May 24, 2007, Petitioner pled guilty to Count One
of the indictment, charging him with possession of a firearm by
a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In

1

connection with his plea, Petitioner and the Government entered
into a written plea agreement containing several provisions,
including a waiver of certain appellate rights as well as a
provision stating that Petitioner "further waives the right to
file a motion to vacate sentence, under 28 U.S.C. § 2255,
attacking his conviction or sentence, and the right to file any
other collateral proceeding attacking his conviction or
sentence."  The agreement further states that it:

> sets forth the full and complete terms and
> conditions of the agreement between
> [Petitioner] and the [Government], and there
> are no other agreements, promises, terms or
> conditions, express or implied.

Petitioner signed the agreement and confirmed at the plea
hearing that he had agreed to the terms set forth in the
agreement which both the Government and the Court reviewed for
him.  With respect to the appellate and collateral waiver
portion of the agreement, the Court specifically confirmed with
Petitioner that he understood that he was waiving those rights.
On August 16, 2007, the Court sentenced Petitioner to a term of
imprisonment of 180 months, to be followed by a term of
supervised release of five years.  However, this term of
imprisonment was reduced to a term of 120 months on September
29, 2008.  Petitioner did not appeal his conviction or sentence.

Years later, on June 19, 2014, Petitioner filed the present motion pursuant to 28 U.S.C. § 2255 arguing that the United States Supreme Court's decision in Descamps v. United States, 133 S. Ct. 2276 (2013), permitted him to file the motion to vacate under Section 2255(f)(3). At the request of Petitioner, the Court stayed the proceedings while the Third Circuit Court of Appeals considered the cases of United States v. Abbott, 748 F.3d 154 (3d Cir. 2014), and United States v. Brown, 765 F.3d 185 (3d Cir. 2014). After the stay was lifted, the parties fully briefed the matter.

## II.    Discussion

The manner in which the Court must address Petitioner's motion is dictated by the nature and effect of the position taken by the Government in this case. As will be discussed below, the Government chose not to raise (and in fact may or may not purport to have waived) the argument on which it would most easily prevail and, instead, decided to contest Petitioner's motion on other grounds. One of the other grounds on which the Government opposes Petitioner's motion is that Petitioner's waiver of his right to file a collateral proceeding attacking his conviction or sentence contained in the plea agreement should be enforced and bar this action. The Court

agrees, finds the waiver to be enforceable, and will dismiss Petitioner's motion on this ground.

As noted, Petitioner filed his motion pursuant to Section 2255. This section permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255(a). However, a criminal defendant may waive his right to file a motion under Section 2255 or to otherwise seek collateral relief. Such a waiver is valid if entered into "knowingly and voluntarily" unless it would work a "miscarriage of justice." United States v. Khattak, 273 F.3d 557, 558 (3d Cir. 2001); United States v. Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008). A district court has an affirmative duty to conduct an evaluation of the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice. See Mabry, 536 F.3d at 237-38.

Here, there is no claim that Petitioner's waiver was anything but knowing and voluntary, and the Court's own review

4

of the record reveals nothing to the contrary.  The real issue

here is whether enforcement of the waiver would work a

miscarriage of justice.  As the Third Circuit has explained, in

determining whether there would be a miscarriage of justice, the

Court must consider factors such as the clarity of the alleged

error, its gravity, its character, the impact of the error on

Petitioner, the impact of correcting the error on the

Government, and the extent to which Petitioner acquiesced in the

result.  See Khattak, 273 F.3d at 563 (citing United States v.

Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).  Applying those

factors here, after consideration of the issues raised in the

parties' various filings, as well as the Court's own evaluation

of the record, demonstrates that no miscarriage of justice will

occur by enforcing the collateral waiver.[1]

      Petitioner claims that he is entitled to relief under

Section 2255 because, in light of the Supreme Court's decision

in Descamps, he no longer qualifies for a sentencing enhancement

pursuant to 18 U.S.C. § 924(e), the Armed Career Criminal Act

("ACCA").  Ordinarily, a conviction for possessing a firearm

after being convicted of a felony carries a statutory maximum

---

[1]   It is important to remember throughout this Memorandum
Opinion that the Court is not considering the merits of
Petitioner's motion itself, nor is it making any ruling as to
the applicability of Section 2255(f)(3), but, rather, the Court
is evaluating his claims through the lens of deciding whether
enforcement of the waiver would work a miscarriage of justice.

sentence of 10 years' imprisonment.  However, if a defendant has

three previous convictions for a "serious drug offense" or a

"violent felony" or both, committed on occasions different from

one another, the defendant instead faces a statutory mandatory

minimum sentence of 15 years' imprisonment.[2]  Under a line of

cases beginning with Taylor v. United States, 495 U.S. 575

(1990), in determining whether a defendant's previous

---

[2]    "Serious drug offense" and "violent felony" are terms
defined in Section 924(e)(2).  A serious drug offense is defined
in subsection (e)(2)(A) as:

> (i)   an offense under the Controlled Substances Act (21
>       U.S.C. 801 et seq.), the Controlled Substances Import
>       and Export Act (21 U.S.C. 951 et seq.), or chapter 705
>       of title 46, for which a maximum term of imprisonment
>       of ten years or more is prescribed by law; or
> (ii)  an offense under State law, including manufacturing,
>       distributing, or possessing with intent to manufacture
>       or distribute, a controlled substance (as defined in
>       section 102 of the Controlled Substances Act (21
>       U.S.C. 802)), for which a maximum term of imprisonment
>       of ten years or more is prescribed by law.

A violent felony is defined in subsection (e)(2)(B) as "any
crime punishable by imprisonment for a term exceeding one year"
which either:

> (i)   has as an element the use, attempted use, or
>       threatened use of physical force against the person of
>       another; or
> (ii)  is burglary, arson, or extortion, involves use of
>       explosives, or otherwise involves conduct that
>       presents a serious potential risk of physical injury
>       to another.

However, the Court notes that the Supreme Court recently held
that the so-called "residual clause" set forth in the last part
of subsection (e)(2)(B)(ii) is unconstitutionally vague and that
therefore enhancing a sentence under this clause violates due
process.  See Johnson v. United States, 135 S. Ct. 2551 (2015).
Although this decision would impact a discussion as to the
merits of Petitioner's claims, the Court, as discussed herein,
does not reach any issue impacted by Johnson.

convictions constitute serious drug offenses or violent felonies, a sentencing court is to apply what is known as the "categorical approach," _i.e._, it is to consider the statutory elements of the prior convictions, not the particular facts underlying the convictions. See _id._ at 600. There is a narrow range of cases, however, in which a sentencing court may look beyond the statutory elements of a prior conviction and employ what is known as the "modified categorical approach." This allows the court to look beyond the face of the statute to specific material -- including the charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented -- in determining which of the statute's alternative elements applied in the defendant's case. See _id._ at 602; _Shepard v. United States_, 544 U.S. 13, 17 (2005).

Petitioner's argument, essentially, is that the Supreme Court's decision in _Descamps_ changed the way in which the categorical and modified categorical approaches apply under the ACCA. In _Descamps_, the Supreme Court noted that the modified categorical approach applies only when the statute underlying the prior conviction "lists multiple, alternative elements" rather than a "single, 'indivisible' set of elements." 133 S. Ct. at 2285, 2283. In other words, the modified

categorical approach can be applied only when a statute is
"divisible" and not when it is "indivisible." Petitioner
asserts that the statutes underlying his prior Pennsylvania
state convictions for manufacturing, delivering, or possessing
with intent to manufacture or deliver a controlled substance, in
violation of 35 Pa. C.S. § 780-113(a)(30), and his prior
convictions for terroristic threats, in violation of 18 Pa. C.S.
§ 2706(a), are indivisible. As such, he argues that the
modified categorical approach set forth in Taylor and Shepard is
inapplicable in determining whether they qualify as predicate
offenses under Section 924(e). He further argues that employing
the standard categorical approach to these prior convictions
demonstrates that the statutes criminalize a broader range of
conduct than would meet the definition of serious drug offense
or violent felony and that, accordingly, they cannot be used as
predicate offenses in finding him to be an armed career
criminal. Therefore, he argues that his statutory imprisonment
range should be no more than 10 years, rather than 15 years to
life, as the Court found at his initial sentencing.

To complicate an already complicated case, although
Petitioner was originally sentenced to a term of imprisonment of
180 months, which would be within the sentencing range were he
an armed career criminal, but clearly illegal if he were not,

his sentence was reduced to a term of imprisonment of 120 months, which would be a legal sentence if the sentencing enhancements of Section 924(e) did not apply. This important fact was not acknowledged by Petitioner until his third filing. While, as Petitioner points out, this fact does not necessarily establish that there would be no miscarriage of justice by enforcing the collateral waiver, it does demonstrate that Petitioner is not facing the possibility of an illegal sentence in any event.

Nonetheless, the Court does not find that the mere fact that Petitioner has already been sentenced within the statutory range that would be applicable were the Court to apply Descamps retroactively in the manner in which Petitioner suggests demonstrates a lack of a miscarriage of justice in and of itself. Petitioner is correct that the likelihood that he would have received a statutory maximum sentence under the facts of his case is probably small.[3] However, there are other factors that, in combination with the fact that Petitioner's sentence

---

[3] That said, the Court does take note of the fact that nothing regarding the nature of Petitioner's crime, the basis for the reduction of sentence, or the actual nature of his criminal history has changed since he was sentenced, and the Court found that sentence to be reasonable under 18 U.S.C. § 3553(a) at the time.

itself is not illegal per se in any event, demonstrate that
enforcement of the waiver would work no miscarriage of justice.

This is where the nature of the position taken by the
Government comes into play. The Government's brief includes an
affirmative waiver that Petitioner asserts amounts to a
concession that his motion is proper and timely under Section
2255(f)(3). The Court will discuss that waiver below. First,
though, it is important to establish that, absent any issue of
such a waiver, the Court would unquestionably find that
Petitioner's motion cannot be brought under that subsection.

Pursuant to Section 2255(f)(3), there are two criteria
for applying Descamps in the manner sought by Petitioner: (1)
that case must have announced a newly recognized right; and (2)
the right has to have been made retroactively applicable to
cases on collateral review. See Dodd v. United States, 545 U.S.
353, 358 (2005).[4] In Descamps, the Supreme Court held that the

_____

[4]    Although the analysis of these two factors overlaps, they
clearly constitute separate factors. The first criterion
depends specifically on the Supreme Court recognizing a new
right; neither this Court nor any other save the Supreme Court
can make a finding of a new right so as to trigger Section
2255(f)(3). As Petitioner points out, though, this Court can
make the requisite finding as to the second criterion, i.e.,
that the right recognized by the Supreme Court is retroactive on
collateral review. See United States v. Swinton, 333 F.3d 481,
486-87 (3d Cir. 2003); United States v. Thomas, 627 F.3d 534,
536-37 (4th Cir. 2010) (collecting cases). Therefore, while the
determination of the existence of a newly recognized right
relies heavily on the law governing retroactivity, it does not

modified categorical approach, used in determining whether a prior conviction constitutes a violent felony for purposes of the ACCA in cases where the prior crime violated a divisible statute, does not apply to statutes that contain a single, indivisible set of elements.  This holding does not meet the first requirement under Section 2255(f)(3).

As discussed above, ordinarily in determining whether a past conviction is a predicate conviction pursuant to the ACCA, courts use what is known as the categorical approach: they compare the elements of the statute forming the basis of the prior conviction with the elements of the "generic" crime of that type, such as burglary.  However, for divisible statutes, that is, statutes that set out one or more of the elements of the offense in the alternative, courts use a modified categorical approach.  This means that courts can consult a limited class of documents, such as indictments, jury instructions, plea agreements, and plea colloquies, to determine

---

actually constitute a retroactivity finding.  Indeed, in Dodd, the Supreme Court expressly characterized the need for a right to have been newly recognized by the Supreme Court and the need for the right to have been made retroactively applicable to cases on collateral review, as separate "conditions" to Section 2255(f)(3).  545 U.S. at 358-59.  See also Figuereo-Sanchez v. United States, 678 F.3d 1203, 1207-08 (11th Cir. 2012); United States v. Pryor, Crim. No. 96-00092-CB, Civ. No. 14-00262-CB-M, 2014 WL 6972275, at **2-3 (S.D. Ala. Dec. 8, 2014).

which alternative formed the basis of the prior conviction.  See
Taylor, 495 U.S. at 600-02; Shepard, 544 U.S. at 17.

In Descamps, the Supreme Court was asked to determine
whether this modified categorical approach could be applied to a
statute having just a single, indivisible set of elements.  In
holding that it cannot, the Court indicated that it was doing
nothing more than applying the law as it had previously
discussed in Taylor and Shepard.  In fact, the Court stated,
*"Our caselaw explaining the categorical approach and its
'modified' counterpart all but resolves this case."*  133 S. Ct.
at 2283 (emphasis added).  The Court explained that the modified
approach had only ever been permitted to help implement the
general categorical approach when a defendant was convicted of
violating a divisible statute.  It clarified that courts are to
look at the fact that a defendant has been convicted of crimes
falling within certain categories, not to the facts underlying
those convictions, and that the modified categorical approach
for divisible statutes retains that central feature.  It further
pointed out that this approach was the only way the Supreme
Court had ever allowed the modified categorical approach to be
used and that the lower court *"dismiss[ed] everything we have
said on the subject"* by applying it differently  Id. at 2285,
2286 (emphasis added).  The Court went on to state that *"under*

12

*our prior decisions, the inquiry is over"* and that the lower court's decision allowing the use of the modified categorical approach for California's indivisible burglary statute *"has no roots in our precedents."* Id. at 2286, 2287 (emphasis added). The Court went so far as to say that the result in the lower court would *"contravene our prior decisions and the principles underlying them."* Id. at 2282 (emphasis added). In short, the Court clearly believed that it was merely clarifying existing law regarding the categorical and modified categorical approaches, not that it was changing that law or recognizing any new right.

As Petitioner points out, although it constitutes a separate criterion under Section 2255(f)(3), the analysis as to whether a case announced a right that has been newly recognized by the Supreme Court is essentially the same as in determining whether a case announced a new rule of constitutional law under Teague v. Lane, 489 U.S. 288 (1989), and its progeny. See Wert v. United States, 596 Fed. Appx. 914, 918 (11th Cir. 2015). A case announces a "new rule," and therefore a newly recognized right, when it "breaks new ground or imposes a new obligation on the States or the Federal Government." Teague, 489 U.S. at 301. In other words, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's

13

conviction became final." Id. Where the beginning point in a court's analysis is a rule of general application designed to apply in a myriad of factual contexts, such as the categorical and modified categorical approaches, "it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent." Chaidez v. United States, 133 S. Ct. 1103, 1107 (2013)(quoting Wright v. West, 505 U.S. 277, 309 (1992) (Kennedy J. concurring)).

        In Descamps, the Supreme Court went out of its way to establish that the rules regarding the categorical and modified categorical approaches were simply applied improperly by the lower court. In no way was the law changed, nor were any additional obligations placed on the Government that did not already exist according to the Supreme Court. Although Petitioner argues that Descamps broke new ground by analyzing an indivisible statute, merely applying a general legal standard to a different set of facts does not constitute the announcement of a new rule. See Chaidez, 133 S. Ct. at 1107. The Supreme Court, in Descamps, repeatedly pointed out that it was merely clarifying the application of the categorical and modified categorical approaches as they had always been understood. At best, it was explaining the application under a different fact pattern, i.e., predicate convictions under an indivisible

statute, although the Supreme Court itself did not seem to view the case in that light. Far from merely underscoring its faithfulness to precedent, the Court repeatedly emphasized that the rule of law previously established was being applied in the wrong manner.

Indeed, every court to issue a reported decision has held that Descamps did not announce or recognize a new right. See, e.g., United States v. Montes, 570 Fed. Appx. 830 (10th Cir. 2014); Ezell v. United States, 778 F.3d 762, 766-67 (9th Cir. 2015); In re Jackson, 776 F.3d 292, 296 (5th Cir. 2015); Adams v. United States, Crim. No. 08-00155-CG, Civ. No. 14-00131-CG-M, 2014 WL 4685522, at *2 (S.D. Ala. Sept. 19, 2014); United States v. Murdock, Crim. No. 2:11-CR-08-DBH, Civ. No. 2:14-CV-205-DBH, 2015 WL 3775061, at *7 (D. Me. June 17, 2015); United States v. Brandsgaard, Crim. No. 04-332(1), 2015 WL 1876304, at *2 (D. Minn. Apr. 23, 2015). Absent any issues regarding the Government's waiver, this Court would unquestionably agree with those courts and find that Descamps does not apply here.

Therefore, in the opinion of this Court, it is clear that Descamps does not newly recognize any right, and, as such, Petitioner could not have relied on the limitation period set forth in Section 2255(f)(3). If the Government had opposed Petitioner's motion on this ground, this would have ended the

analysis.  However, the Government, apparently upon the direction of the Solicitor General's Office, filed what it has referred to as an affirmative waiver of any Teague defense regarding the non-retroactivity of Descamps that the Court must address.  (Doc. No. 76 at 3).  According to the Government, this affirmative waiver "takes *it* out of the case and renders *it* an improper ground for the Court to address on its own."  (Id. n.1) (emphasis added).  Before considering the impact of this language, the Court must clarify what "it" is that the Government purports to remove from the case and decide what exactly is being waived.

The entirety of the waiver states:  "The government affirmatively waives any Teague defense regarding the non-retroactivity of Descamps, but maintains that Mr. Wilson's motion is procedurally barred on other grounds."  This is accompanied by the footnote discussed above arguing that the waiver precludes the Court from addressing the issue of retroactivity sua sponte.  The waiver clearly, then, waives any defense that Descamps does not apply retroactively.  What it does *not* do is affirmatively waive a claim that Descamps does not newly recognize a right or a challenge to the timeliness of the motion generally.  The nature of the waiver, therefore, raises several significant issues.

First, as discussed, this Court would, in fact, find that <u>Descamps</u> did not newly recognize any right, and, further, would hold that such a finding would preclude Petitioner from proceeding under Section 2255(f)(3). An affirmative waiver only as to retroactivity would not impact such a finding, since the Court would never reach the issue of retroactivity. <u>See</u> <u>Wert</u>, 596 Fed. Appx. at 918. Since the Government, at best, forfeited the defense of untimeliness and the argument that there is no newly recognized right, the Court could, and certainly would, address them <u>sua</u> <u>sponte</u>. <u>See</u> <u>Day v. McDonough</u>, 547 U.S. 198, 202 (2006); <u>United States v. Coleman</u>, 219 Fed. Appx. 139, 141 (3d Cir. 2007). Accordingly, were the Court to move past the collateral waiver in the plea agreement and consider whether Petitioner's motion is raised appropriately under Section 2255(f)(3), it would likely find that the Government's waiver has no impact on that decision.

Although Section 2255(f) is the subsection pertaining to the limitation period for filing Section 2255 motions, there really is no timeliness issue here. Assuming <u>Descamps</u> is what Petitioner says it is, his motion would be timely because it was filed within a year of the decision. The relevant questions here are the threshold questions of whether <u>Descamps</u> recognized a new right and whether that right has been made retroactively

applicable to cases on collateral review.  Indeed, the Supreme
Court made it clear in Dodd that the ability to use the later
triggering event as set forth in subsection (f)(3) "does not
apply at all" if the defendant cannot establish the predicate
conditions of a newly recognized right and retroactivity.  545
U.S. at 358.  Therefore, before the Court can proceed to apply
Descamps, it must find that both criteria have been met.  See
also Figuereo-Sanchez, 678 F.3d at 1208 n.4; Shelton v. United
States, No. 2:08-CV-1024, Crim. No. 2:06-CR-002, 2010 WL
2471692, at *2 (S.D. Ohio May 19, 2010); Pryor, 2014 WL 6972275,
at **2-3.

 In making these dual determinations, it is important
to understand how retroactivity works on collateral review.
Under Teague and its progeny, decisions that do not announce new
rules, i.e., those that merely clarify or apply a settled rule,
generally do apply retroactively on collateral review.  See
Chaidez, 133 S. Ct. at 1107.  New rules, on the other hand, are
generally not applicable on collateral review, subject to the
following exceptions:

 (1)  New substantive rules that place certain
 kinds of primary, private conduct beyond the
 power of criminal law-making authority to
 proscribe; and

18

>    (2)  New procedural rules that are implicit in
>
>    the concept of ordered liberty.  Such rules must
>
>    constitute "watershed" rules of criminal
>
>    procedure.

See Teague, 489 U.S. at 311; Chaidez, 133 S. Ct. at 1107 n.3;

Danforth v. Minnesota, 552 U.S. 264, 266 (2008).  Accordingly,

were mere retroactivity the issue, a defendant would be better

off arguing that a decision does nothing more than clarify or

apply existing law.  Indeed, if the issue here was merely

whether Descamps applies retroactively, the Court would probably

find that it does, since it would find that the case did nothing

more than apply well-established law.

This demonstrates the important difference between

retroactivity analysis and the related, but separate,

determination as to whether a new right was recognized by the

Supreme Court.  The novelty of a rule or holding generally works

against its retroactive application in regard to the second

subsection (f)(3) criterion, but is essential to satisfy the

first criterion.  Thus, these two determinations work together

to create limited circumstances under which a motion may be

brought under subsection (f)(3).  See Figuereo-Sanchez, 678 F.3d

at 1208 n.4.  Essentially, since a finding of a newly recognized

right generally would be accompanied by a finding of a new rule

under Teague, the issue in the ordinary 2255(f)(3) determination is whether either of the exceptions to the bar on the retroactive application of new rules applies.  This shows the intended limited impact of subsection (f)(3).  It also demonstrates that waiving a Teague defense regarding non-retroactivity, or taking the position that a rule is retroactively applicable on collateral review, does not, by any means, imply the position that the rule is newly recognized.  Indeed, it more likely indicates the position that the right is not new and therefore generally retroactive collaterally.

In other words, waiving retroactivity implies nothing as to the Government's position regarding whether Descamps recognized a new right, nor does it impact the Court's analysis of that factor.  The Court notes that, in a case in another jurisdiction involving a Section 2255 motion seeking to rely on Descamps under subsection (f)(3), the Government itself took the position that its affirmative waiver of non-retroactivity as a defense did not preclude an analysis of whether the first (f)(3) factor had been met, i.e., whether Descamps recognized a new right.  See United States v. Smith, Crim. File No. 01-089 (MJD), 2015 WL 321403, at *2 (D. Minn. Jan. 26, 2015).  The court in Smith agreed with the Government that, despite its affirmative waiver of any defense of non-retroactivity, the petitioner could

not proceed under Section 2255(f)(3) because <u>Descamps</u> did not establish a newly recognized right or rule. <u>See id.</u> at *3.[5]

The nature of the Section 2255(f)(3) factors also brings into question whether the Government's waiver, even assuming hypothetically that it did apply to both prerequisites under Section 2255(f)(3), actually has the effect that the Government suggests it would. The Government relies on <u>Wood v. Milyard</u>, 132 S. Ct. 1826, 1834 (2012), in asserting that an affirmative waiver of a <u>Teague</u> defense precludes the Court from addressing the issue <u>sua sponte</u>. However, that case addressed the impact of the Government's deliberate waiver as to the timeliness of a habeas corpus petition pursuant to 28 U.S.C. § 2244(d)(1) and the Rules Governing Section 2254 Cases in the United States District Courts (also known as the "Habeas Corpus Rules"). Here, what the Government is seeking to waive is a challenge to retroactivity. Were the issue here merely whether Petitioner's motion was filed within one year of the necessary triggering conditions under Section 2255(f)(3), it would appear that the Government's affirmative waiver may bind the Court.

---

[5] Considering that the Government does, in fact, oppose Petitioner's motion, and given the treatment of a nearly identical waiver in another case, the Court by no means can assume that the waiver here was intended to be broader than what it expressly states. In fact, the waiver is actually quite unambiguous in waiving a defense of non-retroactivity and saying nothing about a newly recognized right, so it in fact needs no interpretation.

However, waiving one of the subsection (f)(3) predicate
conditions creates a very different situation.

When the Government affirmatively waives a defense
that a motion is untimely in a habeas action,[6] it does remove the

---

[6]     The issue is even further complicated by the possible
distinction on this point between habeas corpus actions under
Section 2254 and motions filed pursuant to Section 2255.  Prior
to the decision in Wood v. Milyard, and prior to the case on
which Wood primarily relied, Day, the Third Circuit Court of
Appeals had held that a court may raise the issue of the
timeliness of a Section 2255 motion sua sponte regardless of
whether the Government's waiver of that defense was intentional
or not.  See United States v. Bendolph, 409 F.3d 155, 167-69 (3d
Cir. 2005).  Since, arguably, the fact that Wood and Day dealt
with habeas petitions rather than Section 2255 motions makes
them distinguishable, were this Court to reach the issue, it
would have to determine whether the issue at hand is governed
still by Bendolph.
    Although the law governing habeas petitions and Section
2255 motions is similar in many respects, there are differences
that could be material to the binding effect of a party's
affirmative waiver.  For instance, Rule 5(b) of the Habeas
Corpus Rules requires the respondent to state, inter alia,
whether the petitioner's claim is barred by non-retroactivity or
a statute of limitations.  Rule 5(b) of the Rules Governing
Section 2255 Proceedings for the United States District Courts
(the "Section 2255 Rules"), which is the rule parallel to Rule
5(b) of the Habeas Corpus Rules, places no such requirement on
the respondent.  Moreover, Rule 12 of the Habeas Corpus Rules
clearly indicates that the Federal Rules of Civil Procedure may
be applied to the extent that they are not inconsistent with any
statutory provisions or those rules.  Rule 12 of the Section
2255 Rules, on the other hand, provides that both the Civil
Rules and the Federal Rules of Criminal Procedure may be applied
to the extent that they are not inconsistent with any statutory
provisions or those rules.  This means that a different standard
could apply as to the failure to raise an affirmative defense,
as such defenses are more of an issue in civil cases, and habeas
matters are treated more in line with civil cases than are
Section 2255 matters.

issue from the case entirely. Basically, the Court simply
ignores the issue altogether and proceeds to an analysis of the
merits of the petition. Timeliness, in such a context, is
merely a gateway issue having no impact on the sentencing
court's consideration of the merits. Waiving a defense of non-
retroactivity (or, for that matter, waiving a claim that a case
does not recognize a new right) does not, as the Government
suggests, remove the issue from the case. To the contrary, it
actually injects the analysis into the case. The Government is
not asking the Court to ignore the issue of retroactivity, but
rather to actually apply law retroactively, which, of course,
would require the Court to engage in analysis as to what
retroactive application means in a given case. In a case such
as this one, then, the Government suggests that its waiver can
compel the Court to engage in analysis with which it does not
agree. While the adversarial underpinnings of the criminal
justice system certainly allow for the Government, or any party,
to determine what defenses it will or will not pursue, there is

---

Based on these distinctions, it may well be that the impact
of a respondent's affirmative waiver is not the same under
Sections 2254 and 2255. These potential distinctions would
require the Court to determine whether <u>Wood</u> and <u>Day</u>, which
involved habeas cases, effectively overruled <u>Bendolph</u> as to
Section 2255 cases, or whether <u>Bendolph</u> still controls as to
such matters. Although the Court need not address this issue,
it further demonstrates the difficulty Petitioner would have in
raising his claims even if the Court were not to enforce the
collateral waiver.

a fine line between a party's self-determination, and a party dictating to a court how the law must be applied. The Court believes that this line is crossed when it is compelled, not to ignore a gateway issue with no impact on the merits, as was the case in <u>Wood v. Milyard</u>, but rather to determine how to apply legal principles retroactively in a manner which it believes is contrary to law.

The dual nature of the analysis under Section 2255(f)(3) further demonstrates the problem with such waivers. If the Government can, in fact, affirmatively waive the defense of retroactivity so as to remove the issue from the Court's consideration, it presumably could affirmatively waive a claim that a case does not recognize a new right as well. Such authority would allow the Government to compel the court to apply ***any*** decision retroactively to cases under collateral review under subsection (f)(3). In fact, since, as discussed, a case not involving a new rule of law generally is applicable retroactively to cases on collateral review, merely waiving the "defense" that a case did not newly recognize a right would essentially eliminate any requirement that a motion under subsection (f)(3) be based on a new rule of law or even that the rule have been recognized by the Supreme Court. Such a result may seriously undermine the limited purpose of that subsection.

Thus, what the Court is left with is a waiver that does not affirmatively waive a challenge to the central element of the Court's 2255(f)(3) analysis and that is of questionable validity in the first place. Faced with such a waiver, the Court likely would find that it could reach the issue of the applicability of subsection (f)(3) regardless of the waiver.[7]

However, as the Court has noted several times, it is not actually making a finding regarding the recognition of a new right or retroactivity per se, nor is it specifically making any holding as to the impact of the Government's waiver, but rather, based on the Government's argument that Petitioner's motion is barred by the collateral waiver, is determining whether enforcement of the waiver would lead to a miscarriage of justice. In making this determination, the Court is faced with a defendant serving a sentence within the range that would apply even if he prevailed on his motion. Further, as the Court has explained at length, it believes the law to be clear that Descamps did not newly recognize a right, and therefore that Section 2255(f)(3) should not apply. It would be difficult to find it manifestly unjust to prevent Petitioner from relying on law the Court finds should not apply in any event. In addition,

---

[7] In this regard, the Court notes that whether Petitioner has met the Section 2255(f)(3) factors was an issue the significance of which the parties were well aware, and the issue was extensively briefed.

the Government's waiver, which is the only thing that would give the Court any pause in simply dismissing this motion under Section 2255(f)(3), does not address the ground on which the Court would base this finding, and is quite possibly of limited impact anyway. With all of this in mind, the Court cannot find that any miscarriage of justice will result from enforcing the collateral waiver.

Based on the above, the likelihood of any prejudice to Petitioner in enforcing the waiver would be minimal, given that the Court would very likely dismiss or deny the motion on other grounds. Moreover, while, as discussed several times, Petitioner's sentence arguably could be lowered were the Court to reach the merits of his claims, it is within the statutory range that would be applicable even if Petitioner prevailed. Petitioner certainly entered into the waiver for reasons that, at the time, were quite beneficial to him based on the sentence he was facing, and, as such, he acquiesced in creating the current situation. Although, obviously, the waiver is a barrier to him now, he certainly believed it to be of significant benefit at the time, and it was clearly part of the deal into which he entered, a deal that eliminated the risk that he would face a sentence exceeding 15 years, instead of forcing him to

hope that the Supreme Court would later decide a case upon which he could rely for a retroactive reduction.

**III.**     **Conclusion**

Accordingly, Petitioner's motion is dismissed. Moreover, because Petitioner waived his right to file any such motion, this Court does not reach the merits of Petitioner's claims, and there would be no basis for issuing a certificate of appealability, as Petitioner has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

s/Alan N. Bloch
United States District Judge

Date:  July 23, 2015

ecf: Counsel of record